UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JAN 13 2015
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

MEDIA GENERAL, INC., and
LIN MEDIA LLC,

*Defendants*.

CASE NO. 14-cv-1823 (EGS)
JUDGE: Emmet G. Sullivan
FILED:

# ~~PROPOSED~~ FINAL JUDGMENT

WHEREAS, plaintiff, the United States of America filed its Complaint on October 30, 2014, and Defendant Media General, Inc. ("Media General") and Defendant LIN Media LLC ("LIN"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over each of the parties hereto and over the subject matter of this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. DEFINITIONS

As used in this Final Judgment:

A. "Media General" means Defendant Media General, Inc., a Virginia corporation headquartered in Richmond, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B. "LIN" means Defendant LIN Media LLC, a Delaware corporation headquartered in Austin, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Acquirer" means Hearst Television Inc., Meredith Corporation, Sinclair Broadcast Group, Inc., or another entity to whom Defendants divest any of the Divestiture Assets.

D. "Hearst" means Hearst Television Inc., a Delaware corporation headquartered in New York, NY, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E. "Meredith" means Meredith Corporation, an Iowa corporation headquartered in Des Moines, IA, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F. "Sinclair" means Sinclair Broadcast Group, Inc., a Maryland corporation headquartered in Hunt Valley, Maryland, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G. "DMA" means Designated Market Area as defined by A.C. Nielsen Company based upon viewing patterns and used by the *Investing in Television BIA Market Report 2014* (1st edition). DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers, and advertising agencies to aid in evaluating television audience size and composition.

H. "WVTM-TV" means the NBC-affiliated broadcast television station located in the Birmingham, Alabama DMA owned by Defendant Media General.

I. "WJCL" means the ABC-affiliated broadcast television station located in the Savannah, Georgia DMA owned by Defendant LIN.

J. "WALA-TV" means the Fox-affiliated broadcast television station located in the Mobile, Alabama/Pensacola, Florida DMA owned by Defendant LIN.

K. "WJAR" means the NBC-affiliated broadcast television station located in the Providence, Rhode Island/New Bedford, Massachusetts DMA owned by Defendant Media General.

L. "WLUK-TV" means the Fox-affiliated broadcast television station located in the Green Bay/Appleton, Wisconsin DMA owned by Defendant LIN.

M. "WCWF" means the CW-affiliated broadcast television station located in the Green Bay/Appleton, Wisconsin DMA owned by Defendant LIN.

N. "WTGS" means the Fox-affiliated broadcast television station located in the Savannah, Georgia DMA.

O. "Divestiture Assets" means all assets, tangible or intangible, principally devoted to and necessary for the operations of WVTM-TV, WJCL, WALA-TV, WJAR, WLUK-TV, WCWF, and WTGS as viable, ongoing commercial broadcast television stations, including, but not limited to, all real property (owned or leased) principally devoted to and necessary for the operation of the stations, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property principally devoted to and necessary for the operation of the stations; all licenses, permits, authorizations, and applications therefore issued by the Federal Communications Commission ("FCC") and other government agencies related to the stations; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases, and commitments and understandings of Defendants principally devoted to and necessary for the operation of the stations; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to the stations; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by Defendants in connection with the stations.

## III. APPLICABILITY

A. This Final Judgment applies to Defendants, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Defendants' Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Final Judgment.

## IV. DIVESTITURES

A. Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Hold Separate Stipulation and Order in this matter or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets to one or more Acquirers acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. With respect to divestiture of the Divestiture Assets by Defendants or a Divestiture Trustee appointed pursuant to Section V of this Final Judgment, if applications have been filed with the FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirers of the Divestiture Assets, but an order or other dispositive action by the FCC on such applications has not been issued before the end of the period permitted for divestiture, the period shall be extended with respect to divestiture of the Divestiture Assets for which no FCC

order has issued until five (5) days after such order is issued. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible, including using their best efforts to obtain all necessary FCC approvals as expeditiously as possible. This Final Judgment does not limit the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets. Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the requirements of this Final Judgment.

B. The United States in its sole discretion may approve in writing of any transition services agreement that may be necessary to facilitate the continuous operations of the Divestiture Assets until the Acquirers can provide such capabilities independently. The terms and conditions of any such transition services agreement shall be subject to the approval of the United States, in its sole discretion.

C. In the event that Defendants are attempting to divest assets related to WVTM-TV and WJCL to an Acquirer other than Hearst, assets related to WALA-TV to an Acquirer other than Meredith, or assets related to WJAR, WLUK-TV, WCWF, and WTGS to an Acquirer other than Sinclair:

(1) Defendants, in accomplishing the divestitures ordered by this Final Judgment, promptly shall make known, by usual and customary means, the availability of the Divestiture Assets not yet divested;

(2) Defendants shall inform any person making inquiry regarding a possible purchase of the applicable Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment;

(3) Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the applicable Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine; and

(4) Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

D. Defendants shall provide the Acquirers and the United States information relating to the personnel involved in the operation and management of the applicable Divestiture Assets to enable the Acquirers to make offers of employment. Defendants shall not interfere with any negotiations by the Acquirers to employ or contract with any employee of any Defendant whose primary responsibility relates to the operation or management of the applicable Divestiture Assets being sold by the Acquirers.

E. Defendants shall permit the Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the applicable stations; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F. Defendants shall warrant to the Acquirers that each Divestiture Asset will be operational on the date of sale.

G. Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H. Defendants shall warrant to the Acquirers that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that, following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I. Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets and be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirers as part of a viable, ongoing commercial television broadcasting business. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable, and the divestiture of such assets will achieve the purposes of this Final Judgment and remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

(1) shall be made to Acquirers that, in the United States' sole judgment, have the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the commercial television broadcasting business; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between Acquirers and Defendants gives Defendants the ability unreasonably to raise any of the Acquirers' costs,

to lower any of the Acquirers' efficiency, or otherwise to interfere in the ability of any of the Acquirers to compete effectively.

## V. APPOINTMENT OF TRUSTEE

A. If Defendants have not divested the Divestiture Assets within the time period specified in Section IV(A), Defendants shall notify the United States of that fact in writing, specifically identifying the Divestiture Assets that have not been divested. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets that have not yet been divested.

B. After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the applicable Divestiture Assets. The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture. Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C. Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the

United States and the Divestiture Trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D. The Divestiture Trustee shall serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The trustee shall account for all monies derived from the sale of the applicable Divestiture Assets and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets subject to sale by the Divestiture Trustee and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the Divestiture Trustee and Defendants are unable to reach agreement on the trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

E. Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the trustee shall have full and complete

access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F. After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the trustee's efforts to accomplish the applicable divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such report shall not be filed in the public docket of the Court. Such report shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the applicable Divestiture Assets.

G. If the Divestiture Trustee has not accomplished any applicable divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such report shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to

the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H. If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI. NOTICE OF PROPOSED DIVESTITURE

A. Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirers. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. HOLD SEPARATE

Until the divestitures required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. AFFIDAVITS

A. Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V of this Final Judgment, Defendants shall deliver to the United States an affidavit

as to the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, including efforts to secure FCC or other regulatory approvals, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B. Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Each such affidavit shall also include a description of the efforts Defendants have taken to complete the sale of the Divestiture Assets, including efforts to secure FCC or other regulatory approvals. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A. For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copies or electronic copy of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. NO REACQUISITION OR OTHER PROHIBITED ACTIVITIES

Defendants may not (1) reacquire any part of the Divestiture Assets, (2) acquire any option to reacquire any part of the Divestiture Assets or to assign the Divestiture Assets to any other person, (3) enter into any local marketing agreement, joint sales agreement, other cooperative selling arrangement, or shared services agreement, or conduct other business negotiations jointly with the Acquirers with respect to the Divestiture Assets, or (4) provide financing or guarantees of financing with respect to the Divestiture Assets, during the term of this Final Judgment. The shared services prohibition does not preclude Defendants from continuing or entering into agreements in a form customarily used in the industry to (1) share news helicopters or (2) pool generic video footage that does not include recording a reporter or other on-air talent, and does not preclude Defendants from entering into any non-sales-related

shared services agreement or transition services agreement that is approved in advance by the United States in its sole discretion.

## XII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 1/12/15

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

United States District Judge